Rowdin, Appellant, v. Pennsylvania Railroad Company.

208    623
d215   ¹543
215    544
208    623
216    ¹360

208    623
137SC  ¹280

*Railroads—Passengers—Carriers — Live stock — Drover — Release — Negligence.*

A drover accompanying live stock on a railroad, whose transportation has been included in the price paid by the owner for the transportation of the live stock, is not only a passenger in the sense of one who has paid his fare, but is.also a passenger within the meaning of the Act of April 4, 1868, P. L. 58. A release signed by such a drover does not relieve the railroad company from its own or its servant's negligence, but it puts upon the drover the burden of proving negligence.

*Negligence—Railroads—Passenger—Drover—Release—Evidence.*

Where a drover whose transportation has been included in the price paid for the transportation of the live stock which he accompanies, is injured while in the live stock car, he sufficiently sustains the burden of proof put upon him by a release of injuries which he had signed, by showing that his injuries resulted from a violent collision between his car and another car on the defendant's track.

Argued March 21, 1904. Appeal, No. 273, Jan. T., 1903, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1901, No. 1768, on verdict for defendant in case of J. B. Rowdin v. Pennsylvania Railroad Company. Before DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before
Beitler, J.

The court charged as follows :

The plaintiff here was riding upon what was equivalent to a
free pass ; that is to say, he had paid no fare and was not, in
the ordinary sense of the word, a passenger upon the road of the
Pennsylvania Railroad Company. He had signed a contract,
or rather I do not know whether he had signed it, but he was
upon the road of the Pennsylvania Railroad Company as the
consequence of a written contract in which he, as a shipper,
agreed to relieve the Pennsylvania Railroad Company of all
liability for accident to the man in charge of the horses whether
due to the negligence of the railroad company or to other
causes.

Now, in point of fact, our Supreme Court has held that
that contract is against public policy and is not in its entirety
a contract that the law will uphold, even though the railroad
company and the shipper deliberately make it, put it in writ-
ing and sign it, and the Supreme Court has held that it is
against public policy for a transportation company to contract
to relieve itself of its negligence. And, hence, even in the
case of a man who is traveling upon a free pass, or given trans-
portation free as a part of any other contract he makes with
a railroad company, he can still recover from the railroad com-
pany if he proves that he was injured by the negligence of the
railroad company. In that respect his position is changed
from that of a passenger in the ordinary acceptation of that
term.

A passenger upon a railroad has, to state the case very
broadly, only to prove that he was injured to recover from the
railroad company, unless the railroad company can show that
the cause of the injuries was something absolutely outside and
beyond its control, as, for instance, an act which is termed by
the law an act of God. But the making of a contract such as
was made in this case shifts the burden of proof from the de-
fendant to the plaintiff. It takes away from the defendant the
burden of proving that it was not guilty of negligence, and
puts upon the plaintiff the burden of proving that the defend-
ant was guilty of negligence, because only in case he can prove

that the railroad company was guilty of negligence can he recover against it, and that is in spite of the contract in which it is said he could not recover, even though the defendant company was negligent.

Now in this case the plaintiff has not shown that the railroad company was negligent. He has shown a crash; he has not shown the cause of it; he has not shown the ownership of the thing that caused the crash; he has not shown that which is entitled to go to the jury to base a verdict upon, that the defendant was guilty of negligence.

In stating the case in this way I have done it simply that the plaintiff's counsel may have the benefit of my views on the record so that if the plaintiff, seriously injured, seriously crippled and seriously hurt, desires to overturn the decision either of the court in banc or in the Supreme Court, he may have every chance to do it.

I might add that there is a very grave doubt whether this case does not fall within the case which has been termed here the Price case, and whether it is not governed by the act of 1868. That act provides that where a man is lawfully upon the railroad, but not a passenger, that he shall have no other rights than the rights of a railroad employee. This man was lawfully upon the railroad. He was a man in charge of Quinton's horses; he was put there by the contract that Quinton made; that is to say, he was put there because he was the caretaker of Quinton's horses, looking after them in transit, and it seems to me that it can be well argued that he was lawfully on the railroad, but not a passenger, and therefore that the act of 1868 applies. I put the case on the other point, believing that that is the point about which there is no doubt.

I direct a verdict in this case for the defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in directing judgment for defendant.

*Theo. Cuyler Patterson* and *Samuel Dickson*, with them *Richard C. Dale*, for appellant.—The court below held that by the plaintiff signing the so-called release, the burden of proving defendant's negligence being thus shifted back upon the plaintiff, the jury must be instructed to find for the defendant. In answer

to this we maintain that the facts proved by the plaintiff left no room for doubt, because the only inference—from these facts— is that the defendant's negligence caused the plaintiff's injury: Crary v. Lehigh Valley R. R. Co., 203 Pa. 525; R. R. Co. v. Bausch, 7 Atl. Repr. 731; R. R. Co. v. O'Hara, 3 Penny. 190; R. R. Co. v. McCloskey, 23 Pa. 526; Penna. R. R. Co. v. Henderson, 51 Pa. 315; R. R. Co. v. Butler, 57 Pa. 335.

The plaintiff was a passenger within the meaning of the act of April 4, 1868: Price v. R. R. Co., 96 Pa. 256; Fore- man v. Penna. R. R. Co., 195 Pa. 499; Miller v. Cornwall R. R. Co., 154 Pa. 473.

*John Hampton Barnes,* for appellee.—The plaintiff was in the relation of an employee to the defendant under the provisions of the act of April 4, 1868, and was not a passenger: Penna. R. R. Co. v. Price, 96 Pa. 256; Foreman v. Penna. R. R. Co., 195 Pa. 499; Miller v. Cornwall R. R. Co., 154 Pa. 473.

Even if the plaintiff were a passenger, he had, by the re- lease which he executed, recited above, shifted the burden of proof of negligence so that no presumption of negligence from the evidence offered by him arose by reason of the mere fact that he was injured on the appellee's railroad, and he must prove affirmatively and exclusively the cause and character of the negligence which resulted in his injury: Crary v. Lehigh Valley R. R. Co., 203 Pa. 525.

The cases cited by the appellant do not affect the bearing of the decision in Crary v. Lehigh Valley R. R. Co. upon this case.

In R. R. Co. v. Bausch, 7 Atl. Repr. 731, the negligence of the defendant was admitted.

In R. R. Co. v. O'Hara, 12 W. N. C. 473, the evidence showed precisely how the accident happened, and the only question decided by the court was that the release in a pass for free transportation did not release the carrier from liability for negligence.

In R. R. Co. v. McCloskey, 23 Pa. 526, there was clear proof of the cause of the collision. "There was some evidence, but strongly contradicted, that such an agreement (i. e. a release) had been signed," and the court merely decided (page 532) that a carrier may not contract for exemption "from liability for gross negligence."

R. R. Co. v. Butler, 57 Pa. 335, is to the same effect— " that a stipulation by a common carrier that he shall not be liable for damages does not release him from responsibility for actual negligence by himself or his servants."

OPINION BY MR. JUSTICE MESTREZAT, April 11, 1904:

J. B. Rowdin, the plaintiff, was employed by C. E. Quinton to accompany and superintend the shipment of two horses over the defendant's road from Wissahickon Heights, in Pennsylvania, to Trenton, New Jersey. On the morning of August 26, 1901, the horses were put in a car at Wissahickon Heights and were taken to Chestnut Hill station on defendant's road. Here the plaintiff alighted from the car, and a bill of lading was given him by the defendant's agent in which it was " mutually agreed, in consideration of the rate of freight hereinafter named," that the defendant company would carry from Wissahickon Heights, Pennsylvania, to Trenton, New Jersey, two horses with " 1 man in charge free." The horses were consigned to C. E. Quinton. At the time he received the bill of lading, the plaintiff signed a release indorsed on the back of a contract known as the " Uniform Live Stock Contract," and therein, " in consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the within contract without charge further than the sum paid or to be paid for the carriage upon said freight train of the live stock mentioned in said contract," he voluntarily assumed all risk of accidents or damage to his person or property, and released the defendant from all claims for any personal injury or damage of any kind sustained by him by reason of the negligence of the defendant or of any of its employees. The car with the plaintiff and the horses in it was taken from Chestnut Hill over the defendant company's road to Germantown junction, where it was placed on a siding by itself to await the arrival of one of the defendant's freight trains which was to take it to Trenton. After the car had been on the siding a short time and while the plaintiff was in it trying to quiet one of the horses, frightened by a passing train, another freight car on the same track loaded with oil collided with it. This is clearly a reasonable inference from the evidence, and the jury would have been warranted in finding it as a fact. The collision was

so violent that it knocked off the door of the car containing the horses and placed the other car in a lopsided position so that the " oil was running out of it." The plaintiff was thrown to the corner of the car and seriously injured. He brought this action to recover damages for the injuries he sustained, alleging that they were caused by the defendant company's negligence.

At the conclusion of the testimony the trial judge affirmed defendant's point that " under all the evidence the verdict should be for the defendant," and withdrew the case from the jury. His reason for giving binding instructions was that the release imposed " upon the plaintiff the burden of proving that the defendant was guilty of negligence," and that he had failed to show that his injuries resulted from defendant's negligence. The learned judge also intimated that the plaintiff might be prevented from recovering by reason of the act of April 4, 1868, 2 Purd. Dig. 1604, pl. 6, which relieves a railroad company from liability for injuries received by any person, not a passenger or its own employee, while engaged or employed about its road or cars.

In Pennsylvania Railroad Company v. Price, 96 Pa. 256, a passenger is defined to be " one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as payment of fare, or that which is accepted as an equivalent therefor." The plaintiff when injured was being carried by the defendant company for a consideration under a contract which made him a passenger and was not " riding upon what was equivalent to a free pass," as suggested by the court below. The learned judge also says : " He (plaintiff) had paid no fare and was not, in the ordinary sense of the word, a passenger upon the road of the Pennsylvania Railroad Company." The contract and the release show that the consideration for the transportation of the plaintiff was included in " the sum paid or to be paid for the carriage upon said freight train of the live stock mentioned in said contract." For this consideration, the plaintiff was to be carried from Wissahickon Heights, Pennsylvania, to his destination at Trenton, New Jersey. By the terms of the contract the " shipper is at his own risk and expense to load and take care of, and to feed and water, said stock whilst being transported." It therefore be-

came necessary for the shipper to have some person accompany the horses, and this person was required to be on the train carrying the stock. Recognizing the necessity of some person being in charge of the horses and of his having to travel on the same freight train, and desiring to relieve itself from liability for any injuries sustained by him, the defendant company inserted in the contract for transportation the stipulation "that in consideration of the premises, and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier or its connecting carriers, without charge other than the sum paid or to be paid for the transportation of the live stock," the shipper would indemnify the carrier against all claims for injuries sustained by the person in charge of the stock. The language of READ, J., in Pennsylvania Railroad Company v. Henderson, 51 Pa. 315, an action by a person injured while in charge of stock and riding on a "free ticket," is pertinent and applicable to the case in hand. He says : " As it is absolutely necessary, in carrying stock, that the persons who have charge of them should be carried by the company, the price paid for the freight includes the cost of transporting the drover, who is not therefore a gratuitous but a paying passenger, and the word 'free' is therefore only true so far as that the conductor is not entitled to charge him separately for his passage." The same principle is announced in Hanover, etc., Railroad Co. v. Anthony, 3 Walker's Rep. 210. And it is immaterial that the consideration for the plaintiff's transportation is paid to the defendant company by his employer. The rights of a passenger as against the carrier are not affected by reason of the fact that his fare is paid by another than the passenger : Marshall v. The York, Newcastle & Birmingham Railway Co., 11 C. B. 655. Aside from the effect of the release upon the contract of carriage of the plaintiff, to be noticed hereafter, he was therefore a passenger while traveling on the defendant's road at the time he received his injuries and was entitled to the rights and protection of a passenger as against the carrier company.

We do not agree with the intimation of the court and the contention of the defendant, " that the plaintiff was in the relation of an employee to the defendant under the provisions of the act of April 4, 1868, and was not a passenger." As we

have already observed, the plaintiff at the time of the collision between the cars resulting in his injuries, was being carried under a contract as a passenger for hire on the defendant's road to his destination on the company's line at Trenton, New Jersey. This clearly relieves him from the provisions of the act of 1868 and brings him within the proviso that " this section shall not apply to passengers." As suggested in Pennsylvania Railroad Company v. Price, supra, it would certainly be paradoxical, if not unsound, that a party should be within the letter of the act and at the same time be within the exception. Being a passenger, he cannot be at the same time an employee or a quasi employee within the provisions of the act. The proviso covers all classes of persons bearing the relation of passenger to the carrier, and when that relation is shown to exist the carrier is not in a position to invoke the provisions of the act for its protection. We think this construction of the act of 1868 is in accord with our former decisions. In Pennsylvania Railroad Company v. Henderson, supra, a drover who had paid freight for carrying his live stock was given a drover's pass or " free ticket " for the transportation of the person in charge of the stock, which entitled him to travel on the same train with the stock. There was no consideration paid for the ticket other than the freight paid for the transportation of the stock and that was the same whether the shipper sent a person in charge of the stock or not. The drover was injured while traveling on this ticket and in an action against the railroad company for damages by reason of its alleged negligence, it was held that he was not " a gratuitous but a paying passenger." In Hanover, etc., Railroad Co. v. Anthony, supra, the plaintiff was a cattle shipper and " paid the company thirteen dollars per carload, and this payment, under his agreement with the company, entitled him to go with his stock and return home again on one of their passenger trains." He was given a pass called a " Drover's Return Ticket," and while traveling on it en route home on a passenger train was injured. This court held that the plaintiff "clearly came within the contract relation of a paying passenger," and that " a drover who accompanies a car of cattle on a railroad has a passenger's right of action against the company for an injury sustained, and is not within the purview of the

Act of April 4, 1868, P. L. 58." There the trial judge of the court below whose judgment was affirmed by this court, in his opinion on the reserved question whether the act of 1868 relieved the railroad company from liability said : " When this point was presented to us we indicated our purpose to refuse it, because we could not conceive that one who traveled upon the company's trains under a contract relation could be other than a passenger, and hence not within the scope of the act of assembly referred to. As no case was cited at the time which seemed to decide the question, we reserved the point for more careful consideration. Since that the case of the Pennsylvania Railroad Company v. Henderson, 51 Pa. 315, has been found, and is directly in point. It was argued, however, that that decision is modified by the Act of April 4, 1868, P. L. 58. That this is not the effect of that act seems clear enough from the language of the Supreme Court in the case of Pennsylvania Railroad Company v. Price, 96 Pa. 256."

The cases cited and relied upon by the defendant wherein a postal clerk was held not to be a passenger and within the provisions of the act of 1868, are clearly distinguishable from the case at bar. A postal clerk is carried by a railroad company by virtue of the act of congress, which provides that the company shall carry him without extra charge. Neither he nor his employer, the United States government, contracts with the company for his transportation. As said by PAXSON, J., in Pennsylvania Railroad Company v. Price, supra : " This act (of congress) makes it the duty of the company to carry the mail agent without extra charge, but it no more makes him a passenger than it does the mail matter of which he has the care. The company have no control of him as they have over passengers, for whose safety they are responsible. He is not bound to observe any of the rules prescribed for the protection of passengers." In this case the court in commenting on Pennsylvania Railroad Co. v. Henderson, supra, and noting the distinction between a mail agent and a person traveling with stock by virtue of a contract with the railroad company, says : " There the plaintiff was a drover transporting his live stock upon the cars of the company. He had paid the freight on his stock, and at the same time received a pass for himself. He was traveling with his stock, and was as much a passen-

ger as if he had been traveling with his trunk. He had a direct contract relation with the company. He was under the control of the conductor, and was bound to conform to the reasonable rules of the company the same as other passengers. I see little analogy between such a case and that of a mail agent, who has no contract relation with the company, and who is not in any sense under its control." Nor does Miller v. Cornwall Railroad Company, 154 Pa. 473, rule the case in hand against the plaintiff. There the plaintiff was injured while he was in charge of the cars of his employer which were run over the defendant's road, under a traffic agreement between the parties. He was clearly " engaged or employed on or about the road " of the defendant company in contemplation of the act of 1868.

As stated above, the court granted a nonsuit on the ground that the plaintiff had failed to show that his injuries resulted from defendant's negligence. It is well settled and was conceded by the trial judge that the release signed by the plaintiff did not relieve the defendant company from its own or its servant's negligence. Assuming, as we will, that the burden was on the plaintiff to show negligence, we think the facts, as disclosed at the trial, were sufficient to send the case to a jury on the question of the defendant's negligence. In not developing the facts more fully at the trial, the plaintiff took the chances of the jury finding against him, but that did not warrant the court in withdrawing the case from the jury. The plaintiff was injured while he was being carried by the defendant company over its railroad as a passenger, his injuries resulting from a violent collision between his car and another car on the defendant's track. These facts are not consistent with care and prudence in operating the defendant's road. The only inference arising from the facts is that the collision was caused by defective appliances of transportation or by the negligent operation of the cars on the defendant's road, for either or both of which the company is responsible. A railway company has control of its road and presumably of the cars and trains that are operated on it. When, therefore a collision occurs between trains or cars and injury results to a passenger, the happening of the collision is evidence of, or raises an inference of, the carrier's negligence, and in an

action by the injured person against the carrier, the question of the defendant's negligence is for the jury : Camden & Atlantic Railroad Company v. Bausch, 7 Atl. Repr. 731; Buffalo, Pittsburg & Western Railroad Company v. O'Hara, 3 Penny. 190 ; Crary v. Lehigh Valley Railroad Company, 203 Pa. 525. While in the Crary case the facts did not bring it within the rule just stated, yet the opinion clearly recognizes the rule and its enforcement by the decisions of this court including the other two cases cited above. 'We are of opinion that the plaintiff sustained the burden of proof put upon him by the release, and that therefore the learned trial judge erred in withdrawing the case from the jury.

The judgment is reversed with a venire de novo.