THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE STATE OF MARYLAND, use of LUCY A. WILEY, and others.

*Railroad Company—Postal Clerk—Death by Negligence— Contributory Negligence.*

A postal clerk in the government railway mail service, held a "photograph commission" which entitled him to ride as a passenger on the trains of the defendant, while in the active discharge of duty, or in going from and returning home. While returning to his home, not being at the time on active duty, he left the smoking car in which he had been riding, and entered the postal car, and while there was killed by a collision, which was caused by the negligence of the defendant. It was the custom of the conductors to allow persons holding photographic commissions to ride either in the postal car, or in any part of the passenger cars. Had the deceased remained in the smoking car he would probably not have been killed, as nobody in it was hurt. On previous occasions he had been permitted to ride in the postal car when going on or returning from duty. In an action to recover damages resulting from his death, it was HELD:

That being in the postal car at the time of the accident, did not constitute fatally contributory negligence on the part of the de-

Balto. & Ohio R. R. Co. *vs.* State, use of Wiley.

ceased, and the defendant was not relieved from responsibility for his death on that ground.

APPEAL from the Circuit Court for Howard County.

The case is stated in the opinion of the Court. The verdict and judgment were in favor of the plaintiff for $8000, and the amount was awarded proportionately among the equitable plaintiffs.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, FOWLER, and MCSHERRY, J.

*W. Irvine Cross*, for the appellant.

*Henry V. D. Johns*, for the appellee.

IRVING, J., delivered the opinion of the Court.

This suit was brought in the name of the State, for the use of Lucy A. Wiley and others, to recover damages for the death of William H. Wiley, husband and father of the equitable plaintiffs, occasioned by collision of appellant's trains, going in opposite directions. The negligence of the appellant's officers is conceded, and appellant relies wholly on what it claims to have been contributory negligence on the part of the deceased, as its defence to the action.

The deceased was chief postal clerk in the United States railway mail service. He held what is known as a "photograph commission" from the government. His route was from Baltimore to Grafton. He was entitled under his commission to ride as a passenger on the appellant's trains, by virtue of his commission, while in the active discharge of duty, or in going from and returning home. At the time of the accident he was not in active duty, but was returning to his home until he should be called to duty again, in a few days. He

rode on the occasion of the accident in the smoking car from Baltimore to Washington; and the conductor saw and recognized his commission as entitling him to ride in the cars; and the conductor testifies he did not see him any more. He had left the smoking car, and gone into the postal car, where, after chatting awhile with those on duty in that car, he lay down upon the mail matter and went to sleep. The collision came. The postal car was crushed and the dead body of the deceased was found in the *debris*. The witnesses say if he had remained in the smoking car he would *probably* not have been killed, as nobody in it was hurt. His presence was not required in the postal car, as he was off duty and returning home, subject to call into active service within six days, or sooner, if needed. The evidence shows that no one was allowed to ride in the postal car but such as had a *photographic commission* or a permit; and those who only had the permit had to pay fare. It was the custom of the conductor to allow persons holding photographic commissions to ride either in the postal car or in any part of the passenger cars. Sometimes they would ride in one and sometimes in the other; and the conductor testifies he made no objection. The conductor was not admitted into the postal car, but it was the duty of the postal clerk in charge there to report to him the presence of any one chargeable with fare; and that when notified that clerks not on duty were in that car, he made no objection. It was also in proof that the deceased had, before that time, upon his photographic commission, been permitted on previous occasions to ride in the postal car when going on, or returning from, duty. Two exceptions were taken to the admission of evidence as to the custom of the conductor in giving permission of that sort; but they were waived at the hearing in this Court; so that the sole question intended to be raised by those exceptions is left as presented by appellant's

prayer, which goes to the effect of that evidence.    It
was rejected by the Court below.    That prayer is as
follows, viz., "If the jury find that the deceased, at the
time of his death, was a clerk in the railway mail ser-
vice, and on the sixth of October last, entered the train
of the defendant at Baltimore and rode to Washington
in the smoking car attached to said train, and upon
reaching Washington he left the smoking car and entered
the postal car at Washington, attached to said train, as
testified to by the witness Atkinson, and continued to
remain in said postal car until the time of the accident,
and was in said car when he met his death, and that
from its position in the train the postal car was subject
to greater risk of danger than the cars intended for the
transportation of passengers; and further find that, when
said deceased entered said postal car he was not on duty
as postal mail clerk, and had no official duties to dis-
charge in said car, but was returning to his home at
Grafton, where he would have remained six days, unless
sooner called into active service, and that if the deceased
had remained in the smoking car or been seated in any
other car attached to said train intended for the trans-
portation of passengers, he would not have been killed,
then their verdict must be for the defendant, notwith-
standing the jury may further find that the deceased had
with him a pass, in the evidence called a photographic
commission, entitling him to free transportation on said
train, which was offered in evidence by the plaintiff."

In effect this prayer asked the Court to say, as matter
of law, that notwithstanding the postal car was the place
where the plaintiff ordinarily remained and was required
to remain as a passenger, when in the discharge of his
postal duties, still, if he was not in the discharge of his
official duty, it was fatally contributory negligence for
him to be in that car, although the conductor was in the
habit of allowing him to be in that car when returning

to his home when he was not on duty. We know of no case which would justify such a ruling. Both reason and authority lead us to think the ruling of the Circuit Court was entirely right in rejecting this prayer.

It may be that the location of the postal car was, by reason of its greater proximity to the engine, a place of greater danger than the smoking car or other passenger cars. Still it was a car for the occupancy of passengers who were entitled to ride as such, because of their official position or connection with the post office department of the government, or who paid their fare and was connected with that department. There was no rule of the company forbidding the deceased to enter that car and occupy the same, if he was not in actual service. It was his habit to occupy it when he was returning from duty whenever he chose, and the conductor, who is conceded to be a general agent of the company, not only made no objection, but permitted him from time to time to do so. There are cases, no doubt, where the invitation or permission of the conductor would not protect a man in running a risk which was. so obviously dangerous that a prudent man would not think of incurring it. *Patterson's Railway Accident Law*, sec. 276, and cases cited. To justify a Court in saying that conduct is *per se* contributory negligence, the case must present some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men. *Baltimore & Ohio Railroad Co. vs. Kane*, 69 *Md.*, 21; *Cumberland Valley Railroad Co. vs. Maugans*, 61 *Md.* 61; *Balto. & Ohio Railroad vs. Fitzpatrick*, 35 *Md.*, 46; *Balto. & Poto. R. R. Co. vs. State, use of Stansbury*, 54 *Md.*, 655. Here the deceased was doing what he was actually required to do for the larger part of his time on the cars, and was permitted to do the rest of his time when on the cars. It was provided for his occupancy when on duty as postal clerk,

and his not being on duty did not make the car more dangerous to him. His act therefore in no way contributed to the result which happened. A case precisely like it, being the case of a postal clerk not on duty and in the postal car and injured while there by the gross negligence of the company's agents, is found in *Carroll vs. New York & New Haven R. R.*, 1 *Duer*, 578. The plaintiff in that case was in the postal car by the permission of the conductor, and was allowed to recover damages. The same principles were given effect in *O'Donaell vs. The Allegheny Valley Railroad Co.*, 59 *Pa. St.*, 239, and in *Creed vs. Pennsylvania Railroad Co.*, 86 *Pa. St.*, 139. In the last case the Court says, no legal presumption of negligence can arise from the fact that the passenger was in a car not intended for passengers. In *Pennsylvania Railroad Co. vs. Langdon*, 92 *Pa. St.*, 27, cited by appellant's counsel, there was an emphatic rule of the company forbidding a passenger to ride in a baggage car, which was controlling. We can find nothing in the decided cases inconsistent with the view entertained by the Circuit Court in rejecting the appellant's prayer, and the judgment will be affirmed.

*Judgment affirmed.*

(Decided 5th February, 1890.)